Jose   Rigoberto
BERNAL–GARCIA, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 86–4944
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 19, 1988.

Joshua Turin, Dallas, Tex., for petitioner.

Edwin Meese, III, Atty. Gen., Dept. of Justice, Madelyn E. Johnson, Allen W. Hausman, Asst. Director, Mark C. Walters, Atty. Gen., Robert L. Bombough, Office of

Immigration Lit., Civ. Div., Washington, D.C., for respondent.

David H. Lambert, Dist. Director, I.N.S., New Orleans, La., Ronald C. Chandler, Dist. Director, I.N.S., Dallas, Tex., other interested parties.

Before REAVLEY, KING and JONES, Circuit Judges.

REAVLEY, Circuit Judge:

Jose Rigoberto Bernal–Garcia, a native and citizen of El Salvador, appealed the immigration judge's denial of his request for political asylum. The Board of Immigration Appeals affirmed that denial. In this appeal of the affirmance, we remand for reconsideration of Bernal's claims in light of additional evidence that appeared after the close of the agency proceedings below.

## I. *The Proceedings before the Agency*

In November 1983, Bernal was apprehended as he surreptitiously entered the United States near Los Barreras, Texas. The Immigration and Naturalization Service ("INS") immediately instigated deportation proceedings. At his February 1985 deportation hearing, Bernal stipulated to his deportability and requested additional time to apply for political asylum. The hearing was reset for June 28, and in the interim Bernal applied for asylum under 8 U.S.C. § 1158(a), an application which is also construed as a request for withholding of deportation under 8 U.S.C. § 1253(h). 8 C.F.R. 208.3(b).

During the course of the June hearing, Bernal had an opportunity to present evidence on his behalf. Bernal's oral testimony was consistent with his April 1985 written application for asylum. Bernal testified that while a factory worker in El Salvador in the mid–1970's, he was a union activist with STITAS, a labor union affiliated with the political opposition group, the Democratic Revolutionary Front. At the time, he knew of unionists who were kidnapped, tortured, or killed by the death squads (right-wing paramilitary groups apparently acting in collusion with the Salva-

dorean government). He reported that in early 1978 the manager of the factory where he worked warned him that he would be well-advised to quit the factory. Two weeks later, Bernal left the town and the union, and moved to his parents' rural village. He asserted that during the more than two years he remained there, he took precautions to hide his whereabouts, out of fear that a death squad would come for him. While in the village, he was associated with the Unified Popular Action Front (FAPU), an opposition political organization. During questioning, he admitted that to his knowledge government forces or death squads had never come to apprehend or threaten him.

In May 1980, Bernal entered the United States illegally. He stated that he returned to El Salvador for 26 days in October and November 1983. He explained that the trip was made at his father's request in order that he bring four minor relatives to safety in the United States. He declared that during this visit he stayed at various homes in an effort to avoid detection by government forces. It was upon his return from this visit that he was apprehended, and the deportation proceedings begun.

Additionally, at the June 28 hearing, Bernal entered into evidence numerous newspaper clippings, magazine articles, and Amnesty International reports concerning the political and military situation, as well as the human rights conditions, within El Salvador. These materials reinforce Bernal's claims of extremely oppressive conditions in El Salvador for, among others, union activists affiliated with political opposition groups.

In an oral ruling rendered at the June 28 hearing, the immigration judge denied Bernal's requested relief. On appeal, the Board of Immigration Appeals (BIA) dismissed his claims, by a 2–1 majority, in October 1986. Bernal now appeals the BIA's decision.

Bernal requests reversal on the merits or in the alternative, he requests remand of this cause for consideration of a letter from Bernal's brother in El Salvador, dated November 20, 1986, after the BIA's decision was rendered.

## II. *The Statutory Framework*

Aliens facing deportation can seek relief under two separate procedures. One provision of the Immigration and Nationality Act (the "Act") provides that the Attorney General must grant the withholding of deportation of an alien to a country where the alien's life or freedom would be threatened in the country on account of his membership in a particular group or his political opinion. 8 U.S.C. § 1253(h);[1] *see Guevara Flores v. I.N.S.*, 786 F.2d 1242, 1248 (5th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987). A second avenue for relief is asylum. The Act provides that the Attorney General has the discretion to grant asylum to an alien if the Attorney General determines that the alien meets the statutory definition of "refugee." 8 U.S.C. § 1158(a).[2] A refugee is defined by the Act as an alien who resists return to his homeland "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).[3]

An alien seeking the mandatory withholding of deportation remedy must meet his evidentiary burden with an objective showing "that it is more likely than not" that he will be persecuted upon return to his native country. *I.N.S. v. Stevic*, 467 U.S. 407, 429–30, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984) (holding that the clear probability standard applies in withholding of deportation actions). In contrast, the discretionary remedy of asylum does not require that an alien show it is more likely than not that he will be persecuted in his homeland. *I.N.S. v. Cardoza Fonseca*, 480 U.S. 421, ——, 107 S.Ct. 1207, 1222, 94 L.Ed.2d 434 (1987). The "well-founded fear" standard of the asylum regulation is satisfied if the alien establishes that a reasonable person would fear persecution upon return to his native country. *Guevara Flores*, 786 F.2d at 1249; *see also* 8 C.F.R. 208.5.[4] In the present case, both the immigration judge and the BIA found that Bernal had failed to establish either a personal history of, a well-founded fear of, or a clear probability of persecution, rendering asylum or withholding of deportation unavailable to him.

## III. *The Proffer of Additional Evidence*

Bernal now asks for consideration of a letter he received from his brother, Cristobal Bernal, after the close of the proceedings below. In the letter, dated November 20, 1986, Cristobal writes that Salvadorean soldiers had visited the family home two weeks prior, looking for subversives. The soldiers struck Cristobal, and threatened the abduction of their sister. Upon searching the premises and finding documents in the petitioner's name, they informed Cristobal that petitioner Bernal was on a wanted (death) list as a "syndicalist" (unionist). The soldiers destroyed the family's home and then proceeded to another home where they killed two unionists and wounded others. In the letter, Cristobal warns Bernal not to return to El Salvador.

---

**1.** 8 U.S.C. § 1253(h) provides in pertinent part:

(1) The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

**2.** 8 U.S.C. § 1158(a) provides:

The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.

**3.** 8 U.S.C. § 1101(a)(42) provides in pertinent part:

The term "refugee" means (A) any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....

**4.** 8 C.F.R. § 208.5 provides:

The burden is on the asylum applicant to establish that he/she is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of the country of such person's nationality or, in the case of a person having no nationality, the country in which such person habitually resided, because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

Bernal requests that we remand this cause in order that the letter be considered. Our authority to do this is 28 U.S.C. § 2347(c), which permits this court to order a remand if: (1) the additional evidence is material; and (2) there were reasonable grounds for the failure to submit the additional evidence to the agency.[5]

■ Clearly, the letter is material. It is probative on the issue of likelihood of Bernal being subject to persecution in the event of deportation. In denying relief below, the immigration judge placed significance upon the failure to show that Salvadorean authorities had searched for Bernal.[6] Likewise, the BIA, in its opinion, noted that Bernal remained in El Salvador "without incident" for two years after leaving the union, and that no Salvadorean authorities had inquired about his whereabouts since his departure. Since the letter refutes these assumptions, the materiality of the letter is indisputable. On remand, INS might well conclude that Bernal has a reasonable fear of persecution, warranting the grant of refugee status. If INS were to find that Bernal is a refugee, the second step in the bifurcated procedure contemplated by the asylum statute could then be implemented: the Attorney General or his designee would exercise the statutorily-granted discretion and determine whether to grant Bernal political asylum. 8 U.S.C. § 1158(a).

The question of the reasonableness of Bernal's failure to produce the letter before the agency is not so easily resolved. INS contends that we should refuse to remand for consideration of the additional evidence because Bernal could have filed a motion to reopen the agency proceedings directly with the BIA. 8 C.F.R. §§ 3.2, 3.8(a). While we have declined to grant remand where the additional evidence was acquired more than a year before the BIA's ruling on the immigration judge's decision, *Fleurinor v. I.N.S.*, 585 F.2d 129, 133 (5th

Cir.1978), we have remanded for consideration where the evidence was not obtained until after both the original hearing and the BIA's affirmance. *Coriolan v. I.N.S.*, 559 F.2d 993, 1004 (5th Cir.1977). The *Coriolan* court noted that "[i]n this context, a refusal to accept the petitioners' excuse as reasonable would virtually read this remand provision out of the statute." *Id.*

■ In determining whether to remand for consideration of additional evidence, we are mindful that the granting of asylum is not only a legal act; it is a humanitarian one as well. Since the ultimate decision regarding Bernal's deportation may well decide his life or death, we apply *Coriolan*'s principles to this case and remand for a reconsideration of Bernal's claims in light of his brother's letter.

IV. *Attorneys' Fees*

Bernal seeks to recover attorneys' fees under § 2412 of the Equal Access to Justice Act, 28 U.S.C. § 2412. Section 2412(d)(1)(A) provides that a court shall award attorneys' fees to a "prevailing party" in a civil action brought by or against the United States, including judicial proceedings to review agency action, unless the court finds that the government's position "was substantially justified" or "special circumstances make an award unjust."

■ Since we have only remanded this case for reconsideration in light of additional evidence, Bernal cannot be considered a "prevailing party" at this point in the proceedings. *See Miller v. Schweiker*, 560 F.Supp. 838, 840 (M.D.Ala.1983); *see also Cervantez v. Whitfield*, 776 F.2d 556, 562 (5th Cir.1985) (the proper inquiry is whether the plaintiff prevailed on the central issue by acquiring the primary relief sought). Bernal's request for attorneys' fees is denied.

Accordingly, the order of the Board of Immigration Appeals is REVERSED, and the cause is REMANDED for further proceedings consistent with this opinion.

---

**5.** 28 U.S.C. § 2347(c) provides in pertinent part:
    If a party to a proceeding to review applies to the court of appeals in which the proceeding is pending for leave to adduce additional evidence and shows to the satisfaction of the court that—
    (1) the additional evidence is material; and
    (2) there were reasonable grounds for failure to adduce the evidence before the agency;
    the court may order the additional evidence and any counterevidence the opposite party desires to offer to be taken by the agency.

**6.** The immigration judge also states that Bernal "never attempted to conceal his identity or activities," inferring that since no harm came to him, he must not have been targeted by the government. The judge misstates the record; Bernal testified that both before first leaving El Salvador and during his brief return in 1983, he from time to time changed where he slept or worked in an effort to evade the authorities (Record at 55, 60).