**Julius A. OSAGHAE, Petitioner,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE,**
**Respondent.**

**No. 90–2150.**

United States Court of Appeals,
Seventh Circuit.

Argued June 14, 1991.
Decided Sept. 5, 1991.

Melville W. Washburn (argued), Jeffrey R. Tone, Sidley & Austin, Chicago, Ill., for petitioner.

Alison R. Drucker, David J. Kline, Carl H. McIntyre, Jr. (argued), Department of Justice Office of Immigration Litigation, Washington, D.C., A.D. Moyer, I.N.S., Chicago, Ill., for respondent.

Before POSNER, MANION and KANNE, Circuit Judges.

POSNER, Circuit Judge.

Julius Osaghae, a Nigerian national who has been ordered deported, asks us to set aside a decision by the Board of Immigration Appeals denying his requests (which are in the alternative) for asylum, for withholding deportation on the ground that he has a well-founded fear of persecution by the Nigerian government if he is deported, or for suspending deportation on the ground of extreme hardship. 8 U.S.C. §§ 1158(a), 1253(h), 1254. He claims to have newly discovered evidence that the Board ought to consider—and he is met at the threshold by the government's argument that a reviewing court has no authority to direct the Board to consider newly discovered evidence.

We can dispatch the threshold argument quickly enough. The statute that empowers the courts of appeals to review

decisions by the Board of Immigration Appeals, 8 U.S.C. § 1105a, states that such review is to be governed by 28 U.S.C. § 2347, subsection (c) of which empowers the court of appeals in appropriate cases to direct the agency to consider newly discovered evidence. That might seem the end of the matter but the government argues surprisingly that we ought to disregard section 2347(c) because it is inconsistent with the provision in the Immigration and Nationality Act that the court of appeals shall base its decision "solely upon the administrative record upon which the deportation order is based." 8 U.S.C. § 1105a(a)(4). There is no inconsistency. True, we are not to take evidence and base our decision on some mixture of that evidence with the evidence that was before the Board. But if the administrative record is inadequate because the Board has failed without justification to consider newly discovered evidence, we can remand for the creation of an adequate record. *Bernal–Garcia v. INS*, 852 F.2d 144, 147 (5th Cir.1988); *Becerra–Jiminez v. INS*, 829 F.2d 996, 1001 (10th Cir.1987), and cases cited there.

The Tenth Circuit in *Becerra–Jiminez* suggested that the Ninth Circuit had taken the contrary view. We doubt that. It held only that it wouldn't order the Board to reopen a deportation hearing on the basis of newly discovered evidence first tendered to the court; the applicant must first petition the agency to reopen the case. *Ramirez–Gonzalez v. INS*, 695 F.2d 1208, 1213–14 (9th Cir.1983); *Patel v. INS*, 741 F.2d 1134, 1137 n. 2 (9th Cir.1984); *Roque–Carranza v. INS*, 778 F.2d 1373 (9th Cir. 1985). Deportees must not be encouraged to play a delay game. It is different when (as in this case) the Board itself has prevented the applicant from placing the evidence before it. If the Board has acted improperly the applicant is entitled to judicial relief—and not just to the court's telling him that he can ask the Board to reopen the case, which he could do anyway. That would be no relief at all.

■ It is not as if section 1105a(a)(4) (not cited, incidentally, in the Ninth Circuit cases) stated some esoteric principle limited

to immigration appeals, so that the government's view if accepted would have no reverberations in other areas of law. The general rule, applicable across the board to judicial review of administrative action and merely codified for immigration appeals in section 1105a(a)(4), is that the court may not go outside the administrative record, *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985)—and *for that very reason* the court must remand the case if the record is inadequate, rather than try to remedy the inadequacy directly by taking evidence. *Id.* at 744, 105 S.Ct. at 1607. If the government's view were accepted, section 2347(c) would be nullified in all agency cases, not just in immigration cases, because in all cases it could be argued that since the reviewing court must limit itself to the administrative record it cannot consider newly discovered evidence even to the extent of requiring the Board to consider it.

■ So we reject the government's first argument and consider now whether Osaghae was justified in failing to tender the newly discovered evidence to the Board, and if so whether the evidence was material. (These are the criteria in section 2347(c).) There is little doubt about either point. Osaghae, who had been admitted to the United States on a student visa in 1975, was arrested by the Immigration and Naturalization Service in June 1988 for having overstayed his welcome. He has been in custody ever since. While in custody Osaghae wrote to both Amnesty International and a Nigerian human rights group for published materials that he might use to bolster his contention that he would face persecution if deported to Nigeria. Shortly after he wrote these letters, the INS for unknown reasons began shuttling Osaghae among a series of jails. When the organizations to which he had written replied by mailing him the materials he had requested, he was no longer in the jail from which he had written and instead of forwarding his mail the jail marked it "Return to Sender." Osaghae made additional efforts to obtain the materials but all to no avail despite efforts by the organizations themselves to find him. The materials did not

catch up with him until a month after the Board of Immigration Appeals rendered the decision that is under review. In these circumstances Osaghae can hardly be faulted for having failed to place the materials before the Board in timely fashion.

■ Are they material? Osaghae's history becomes pertinent here. Both he and his father were active in the Biafran independence movement, and both were arrested, and imprisoned for several months, in 1965, before the Biafran civil war, and again in 1973, after the war ended (it lasted from 1967 to 1970 and ended in the defeat of the Biafrans). Under the Board's precedents, if either incident was "persecution" there is a presumption, which the immigration service would have to rebut, that Osaghae has a well-founded fear of persecution should he be sent back to the country that did the persecuting, that is, to Nigeria. *In re Chen*, No. A–26219652 [available on WESTLAW, FIM–BIA database], 1989 BIA LEXIS 10 (Interim Decision # 3104). "Persecution" means, in immigration law, punishment for political, religious, or other reasons that our country does not recognize as legitimate. *Zalega v. INS*, 916 F.2d 1257, 1260 (7th Cir.1990). The Board held that neither incident was persecution and so the presumption did not come into play.

The Board's discussion is cryptic—in fact incomprehensible—and its lawyer's amplifications cannot fill the gaps. The Board does not explain why the first imprisonment was not persecution, inasmuch as Osaghae claimed without contradiction to have been imprisoned for participating in an organization that, at the time anyway, confined itself to peaceful efforts to obtain Biafran independence from a military government then as now controlled by Moslems from northern Nigeria who were hostile to the mainly Christian population of Biafra in the south of the country (Osaghae is Christian). The Board thought it significant that Osaghae was a member merely of the youth division of the organization, but did not explain *why* that is significant. As for the second arrest and imprisonment, the Board remarked that it occurred during the civil war, but it did not; the war had

ended three years earlier. The Board's lawyer attempts to cure this embarrassing oversight by pointing out that guerrilla resistance continued, but this is not in the Board's opinion and its lawyers may not supply new grounds in the court of appeals for the Board's decision. *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Mayo v. Schiltgen*, 921 F.2d 177 (8th Cir.1990).

This slip by the Board was compounded by the remarkable statement that there was no evidence "that the Nigerian government has any interest in him whatsoever" after all these years since Osaghae left the country following his second arrest and detention. What makes the statement remarkable is that the immigration service falsely advised the Nigerian consulate in New York that Osaghae was being deported for criminal activities. What is true is that Osaghae has a number of arrests and several convictions, but in connection with his application for suspension of deportation the Board expressly found that, notwithstanding his criminal record in this country, he is a man of good moral character. The sole ground for deporting him is that he overstayed his student visa. But alerted that a criminal is being deported to their country the Nigerian authorities are likely to look through their files to see whether they have any record of the deportee's activities in Nigeria, and such a search could well uncover Osaghae's participation in the hated Biafran secession movement.

So deficient is the analysis in the Board's opinion that we have the gravest doubt that its finding that Osaghae lacks a well-founded fear of persecution if deported to Nigeria is supported by sufficient evidence even in the record that was before the Board. *Kubon v. INS*, 913 F.2d 386, 388 (7th Cir.1990); *Carvajal–Munoz v. INS*, 743 F.2d 562, 567, 569 (7th Cir.1984). And certainly in light of the shakiness of that finding the documents that Osaghae asks us to direct the Board to consider are material. They could well tip the balance in his favor. They document in depressing detail the many human rights violations committed by the Nigerian government against

political opponents right up to the present day and would seem to create a prima facie case that anyone with a record of political opposition is in danger of persecution—especially, one might think, if the government has been told that the opponent was being deported because of his criminal activities in America. The documents cannot be discounted merely because they do not mention Osaghae by name. Asylum is not limited to the notorious. If we could be confident that the Board were fully apprised of the situation in Nigeria, little purpose would be served in directing it to consider materials that describe that situation. But nothing in the Board's opinion suggests that the Board is knowledgeable about Nigeria; its mistaking the ending date of the civil war is not reassuring. Administrative expertise ought not be presumed in the face of evidence that it does not exist.

Other newly discovered evidence—this going to Osaghae's alternative request that deportation be suspended on the ground of extreme hardship—consists of documents which Osaghae claims establish that he is married and has a serious lung ailment. These documents, too, both are material to his request and were unobtainable by him in time to submit to the Board. We direct the Board to consider this evidence on remand as well, should it conclude once again that Osaghae is not entitled to withholding of deportation on the ground that he has a well-founded fear of persecution should he be deported.

The order of the Board of Immigration Appeals is set aside and the matter returned to the Board for further consideration consistent with this opinion.