**Erica P. De SOUZA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 92–3042.

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1993.

Decided July 23, 1993.

Nicholas C. Grapsas, Madison, WI (argued), for Erica P. De Souza.

Fred Foreman, U.S. Atty., Crim. Div., Chicago, IL, William J. Howard, Donald A. Couvillon (argued), David J. Kline, Dept. of Justice, Office of Immigration Litigation, Washington, DC, A.D. Moyer, I.N.S., Chicago, IL, for I.N.S.

Before BAUER, Chief Judge, EASTERBROOK, and ROVNER, Circuit Judges.

BAUER, Chief Judge.

Kenyan native Erica P. De Souza petitions for review of a decision of the Board of Immigration Appeals ("BIA" or "Board").

The Board denied her application for asylum and withholding of deportation pursuant to Sections 208(a) and 243(h) of the Immigration and Nationality Act (the "Act"). 8 U.S.C. §§ 1158(a) and 1253(h). We affirm.

## I.

Erica P. De Souza was born on July 17, 1963 in Mombasa, Kenya. Administrative Record ("A.R.") at 49. Only a few months later, on December 12, 1963, Kenya obtained its independence from the United Kingdom. *Id.* at 2, 131. De Souza's parents were born in Goa, a former Portuguese colony which India invaded and conquered shortly after De Souza's birth. De Souza claims that the Kenyan government refused to grant her citizenship because of her ethnic origins. *Id.* at 132. De Souza lived in Kenya until 1980. She attended a public grade school and a private high school. *Id.* at 96. In 1980, she travelled to the United States for high school as part of the American Field Service program. *Id.* De Souza returned to Kenya in 1984 to visit her family. *Id.* at 50. Because she was not a citizen, the Kenyan government required her to obtain a three-month tourist visa for her trip. The United Kingdom designated her as a British Protected Person because, at the time of De Souza's birth, Kenya was a British colony. The United Kingdom, like Kenya, also denied her citizenship.

De Souza returned to the United States in January 1985 to continue her education. The Immigration and Naturalization Service ("INS") admitted De Souza back into the country as a nonimmigrant student and authorized her to remain until February 27, 1987. *Id.* at 141. When De Souza stayed in the United States past that date, the INS instituted deportation proceedings. *Id.* De Souza admitted that she had stayed past February 27, 1987, but applied for section 208(a) asylum and section 243(h) withholding of deportation.

On October 4, 1988, an immigration judge conducted a hearing on De Souza's application for asylum and withholding of deportation. De Souza testified at the hearing. She stated that in Kenya people of Indian descent are subject to racial discrimination and harassment. She claimed that her mother, a manager who works in an import-export business, is constantly harassed in her job by the black people she works with. *Id.* at 54, 57. De Souza expressed concern that if she returns to Kenya she will have no rights, will be considered an outsider because of her ethnicity and, as a result, will not be able to obtain employment. *Id.* at 58. De Souza added that a Kenyan police officer, for no apparent reason, once pulled her over while she was driving and asked to see her driver's license. *Id.* at 59. She admitted, however, that she had not had any other problems with the Kenyan government, that her mother and sister who still reside there had never been arrested or detained, and that she had not tried to return to Kenya at all since her 1984 visit. *Id.* at 59, 61.

The immigration judge found that De Souza had not demonstrated that if she returned to Kenya she would face persecution. *Id.* at 39. The immigration judge therefore denied De Souza's application for asylum and withholding of deportation.[1] *Id.* at 40.

De Souza appealed to the BIA. The Board noted that De Souza did not produce any evidence that the Kenyan government intended to persecute her on account of her race, or that it did not intend to protect her from unlawful assault or violence. *Id.* at 3. The Board also observed that De Souza's mother and sister continued to reside in Kenya without incident, that Kenya's laws are not directed specifically at any one group, and that it is within Kenya's sovereign power to decide who its citizens will be. *Id.* at 4. Finally, the Board determined that Kenya's denial of citizenship to De Souza did not deprive her of any right because persons like De Souza, who were born before Kenyan independence of non-Kenyan parents, have never been considered citizens of Kenya. *Id.* Accordingly, the BIA dismissed De Souza's appeal and ordered De Souza to leave the United States or be deported. *Id.*

---

**1.** The immigration judge also granted De Souza voluntary departure as long as she left the United States by February 1, 1989. A.R. at 40. If she stayed past that date, the immigration judge ordered that De Souza be immediately deported from the United States to Kenya. *Id.*

## II.

### A. Standard of Review

■ We review the Board's decision to grant or deny De Souza's application for asylum and withholding of deportation for abuse of discretion. *Osuch v. INS*, 970 F.2d 394, 396 (7th Cir.1992).

### B. De Souza's Application for Section 208(a) Asylum

■ Section 208(a) authorizes the Attorney General (and the INS as her agent), in the exercise of her discretion, to grant asylum to an alien who is a refugee as defined in the Act.[2] *INS v. Elias–Zacarias*, —— U.S. ——, ——, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). An asylum applicant must prove that she is a refugee, which the Act defines as an alien who is unable or unwilling to return to the alien's country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[3] 8 U.S.C. § 1101(a)(42)(A). *See also* 8 C.F.R. § 208.13 (burden of proof on asylum applicant to establish that she is a refugee as defined by the Act).

De Souza failed to prove that she suffered persecution or that she possesses a well-founded fear of persecution. De Souza claims that the Kenyan government's denial of Kenyan citizenship, permanent residency, and education at Kenyan public schools was so horrific that it amounted to persecution. She also points to her 1984 visit, when she was admitted to Kenya as a tourist with no right to work, as further evidence that the Kenyan government has persecuted her because of her Asian race and Indian nationality.

We have described "persecution," for purposes of the Act, as punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate. *Osaghae v. INS*, 942 F.2d 1160, 1163 (7th Cir.1991). Our cases reveal that De Souza's claimed suffering at the hands of the Kenyan government does not amount to this type of persecution. Consider, for example, the case of Chelvadurai Sivaainkaran. Sivaainkaran, a Tamil who lived in war-torn Sri Lanka, was a man who unsuccessfully applied for asylum. Sri Lanka was embroiled in an ethno-religious conflict between the minority Tamils and the majority Sinhalese. *Sivaainkaran v. INS*, 972 F.2d 161, 162 (7th Cir.1992). Sivaainkaran presented evidence that soldiers of the Sinhalese-dominated government chased him through a field, fired shots at him, and ransacked his home. *Id.* at 164. Later, an angry Sinhalese mob forced Sivaainkaran's sister and brother-in-law from their home. His sister and brother-in-law lost many of their possessions and, because of the mob's actions, were forced to live in a refugee camp for several weeks. *Id.* Sivaainkaran also claimed that his wife could not leave their home for fear that government soldiers would detain or rape her and that she could not work as a school teacher because the war caused the schools to be closed. Finally, Sivaainkaran stated that he feared persecution if he returned to Sri Lanka because Tamils in Sri Lanka were subject to government-sponsored reprisal killings, large-scale warrantless arrests, and torture. *Id.* at 164. The BIA denied his application for section 208(a) asylum and section 243(h) withholding of deportation. *Id.* at 162. We held that

---

**2.** Section 208(a) states:

The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.

8 U.S.C. § 1158(a).

**3.** In pertinent part, the Act defines a refugee as:

any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....

8 U.S.C. § 1101(a)(42)(A).

Sivaainkaran lacked an objectively reasonable fear of persecution and therefore denied his petition for review of the Board's order. *Id.* at 165–66.

Clearly, De Souza presents a much weaker case of "persecution" than did Sivaainkaran. She has merely alleged the following acts by the Kenyan government: (1) she was denied citizenship; (2) she had to attend a private high school before she came to the United States; and (3) a Kenyan police officer once pulled her over and asked to see her driver's license. These incidents, however unfortunate, do not constitute "persecution" for purposes of the Act.

The refusal of the Kenyan government to grant De Souza citizenship did not deprive her of any right; she had no right to Kenyan citizenship. It is well within the discretion of the Kenyan government to decide who its citizens will be.

Her contention that being forced to attend a private high school amounts to persecution borders on frivolity. The Kenyan government could provide public education to all people, no people, or some people without "persecuting" them. De Souza's claim really amounts to this: Kenya did not provide her with *enough* public education. She was allowed to attend public grade school, but not public high school. Providing public elementary education to noncitizens, as the Kenyan government did for De Souza, is not persecution.[4] To the contrary, one might even call it generosity.

Finally, we come to De Souza's allegation that a police officer once stopped her and asked to see her driver's license. What exactly does this add to her case? The answer is: nothing.

Compared to the incidents and threats of government-related torture, shootings, mob violence, mass arrests, and killings endured by Chelvadurai Sivaainkaran, De Souza's claim that the government of Kenya persecuted her and that she possesses a well-founded fear of persecution with respect to Kenya is almost trivial. As we affirmed the denial of Sivaainkaran's asylum application, we do the same here. *See also Skalak v. INS*, 944 F.2d 364, 365 (7th Cir.1991) (petitioner who was jailed twice and harassed for refusal to join the Communist Party presented evidence of only mild persecution that fell short of that required by the Act). De Souza's other allegations—racial discrimination and harassment and difficulty in obtaining employment—likewise do not establish persecution or a well-founded fear of persecution.

We note that to demonstrate the Act's "well-founded fear of persecution," De Souza was required to present specific, detailed facts which would show that she had a good reason to fear that she would be singled out for persecution if she returned to Kenya. *Sivaainkaran*, 972 F.2d at 163; *Zulbeari v. INS*, 963 F.2d 999, 1000 (7th Cir.1992). This she has failed to do. The Board correctly dismissed her appeal with respect to section 208(a) asylum.

## C. De Souza's Application for Section 243(h) Withholding of Deportation

■ De Souza's application for relief pursuant to section 243(h) is equally without merit. Under section 243(h), the Attorney General must withhold deportation of an alien if she determines that, if deported, the alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion.[5] Like section 208(a), an alien

---

4. Indeed, even in the United States, there is no federal constitutional right to education. *See Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 458, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988); Gregory E. Maggs, *Innovation in Constitutional Law: The Right to Education and the Tricks of the Trade*, 86 Nw.U.L.Rev. 1038 (1992).

5. Section 243(h) reads as follows:
   (1) The Attorney General shall not deport or return any alien (other than an alien described in section 1251(a)(4)(D) of this title) to a coun-

try if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.
   (2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—
   (A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

who applies for relief pursuant to section 243(h) bears the burden of persuasion. The standard of proof, however, is different. Section 243(h) requires that an applicant establish that it is more likely than not that the alien would suffer persecution if deported. *INS v. Cardoza–Fonseca,* 480 U.S. 421, 423, 107 S.Ct. 1207, 1209, 94 L.Ed.2d 434 (1987). The standard has also been described as requiring that the applicant prove that she faces a clear probability of persecution if deported. *INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984). Whichever way we describe the standard, though, one thing is clear: an applicant for relief pursuant to section 243(h) bears a heavier burden than an applicant that applies for section 208(a) asylum. *Carvajal–Munoz v. INS,* 743 F.2d 562, 576 (7th Cir.1984). Accordingly, since De Souza has not established that she is eligible for relief under section 208(a), her application for section 243(h) relief also fails. *See id.* at 579 (where petitioner's evidence fell short of that required to establish well-founded fear of persecution for section 208 relief, evidence also fell short of establishing likelihood of persecution as to entitle petitioner to section 243(h) relief). The BIA did not abuse its discretion when it denied De Souza's section 243(h) claim.

### III.

The Attorney General's decision to grant asylum to an alien or to withhold deportation of an otherwise deportable alien is not intended to cover all aliens who, like so many of our ancestors, understandably wish to remain in the United States. Rather, these remedies are meted out in only the most extreme cases, as the Attorney General sees fit when she exercises her discretion. De Souza's is not such an extreme case. The Board's decision to deny De Souza's application for asylum and withholding of deportation is

AFFIRMED.

ILANA DIAMOND ROVNER, Circuit Judge, concurring in the judgment.

I concur in the Court's judgment, for I agree that De Souza has failed to establish persecution or a well-founded fear of persecution as section 208(a) requires. However, I cannot join the majority's characterization of De Souza's claim as "almost trivial." (*Ante* at 1159.)

(B) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;

(C) there are serious reasons for considering that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States; or

(D) there are reasonable grounds for regarding the alien as a danger to the security of the United States.

For purposes of subparagraph (B), an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime.

8 U.S.C. § 1253(h).