Elizabeth **MAKONNEN**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Respondent.

No. 93–4010.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1994.

Decided Jan. 11, 1995.

Janis M. Clay, Minneapolis, MN, argued, for appellant.

Richard M. Evans, U.S. Dept. of Justice, Office of Immigration Litigation, argued (Frank W. Hunger, U.S. Asst. Atty. Gen., and David J. Kline, Asst. Director, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Elizabeth Makonnen petitions for review of a decision of the Board of Immigration Appeals (the BIA or Board) denying her application for political asylum under 8 U.S.C. § 1158 (1988 & Supp. V 1993) and withholding of deportation under 8 U.S.C. § 1253(h) (Supp. V 1993), granting her request for voluntary departure instead, and denying her

motion to remand her case to the Immigration Judge for consideration of additional evidence. We grant the petition and remand to the Board for further proceedings.

## I.

Makonnen, an Ethiopian national and a member of the Oromo Liberation Front (OLF), entered the United States on September 21, 1988, on a non-immigrant student visa. She accepted employment without Immigration and Naturalization Service (INS) authorization. Consequently, an order to show cause alleging deportability under 8 U.S.C. § 1251(a)(9) (1988) was issued on July 31, 1990, with a telephone hearing held on January 29, 1991. Makonnen admitted the factual allegations in the order and conceded deportability, but requested asylum under 8 U.S.C. § 1158, withholding of deportation under 8 U.S.C. § 1253(h), or, alternatively, voluntary deportation, asserting that she feared persecution if forced to return to Ethiopia.

After a final administrative hearing on March 25, 1992, the Immigration Judge noted that Makonnen had supported the OLF when she was a child and had assisted her father in its activities, opposing the former Marxist government. Since her arrival in the United States Makonnen had attended monthly OLF meetings, where she taught youngsters about Oromo culture and cooked ethnic food. Makonnen believed that the Ethiopian government was aware of her OLF activities, and for this reason she feared persecution if she were forced to return to Ethiopia. The judge noted that

respondent's claim principally rises and falls on her own testimony and general background information concerning the present conditions in Ethiopia. The court takes administrative notice that the Mengistu regime fell in May 1991 and that the respondent's previous fear of returning to Ethiopia no long[er] exists.... While the respondent seems to say that she fears the general ethnic conflict and unrest existing in Ethiopia at the present time, this information is insufficient to establish eligibility for Asylum per se.

*In re Makonnen*, No. A 29 466 150, Oral Decision of the Immigration Judge at 6 (Mar. 25, 1992). The judge denied Makonnen's request for asylum and for withholding of deportation, but granted voluntary deportation with an accompanying order of deportation should she fail to leave the United States within the period prescribed for voluntary departure.

Makonnen appealed to the Board of Immigration Appeals, and moved the Board to remand her case for a further hearing

> based on material evidence that was not available and could not have been discovered or presented at the final deportation hearing—departure of the OLF from the coalition government and a pattern of human rights abuses by the new government in Ethiopia, including the arrest and arbitrary detention of Makonnen's own father just days after Makonnen's March 25, 1992 hearing.

Brief of Petitioner at 2. The Board dismissed the appeal and denied Makonnen's motion to remand.

Petitioner timely filed a petition for review, and requested leave to adduce additional evidence under 28 U.S.C. § 2347(c). In her petition, Makonnen argues that the Board erred (1) in applying a stricter standard to her political asylum claim than that mandated by law, (2) in rejecting her claim for asylum based on political opinion because she had not shown that all ethnic Oromos were being persecuted, (3) in denying procedural due process by refusing her the opportunity for a hearing on evidence crucial to her case, (4) in failing to find that, more likely than not, Makonnen would be subject to persecution in Ethiopia, or at least had the requisite fear necessary for a grant of asylum, and (5) in refusing to grant her motion to remand for consideration of her additional evidence.

## II.

Before discussing Makonnen's issues, we first supply some general background information based upon published studies.[1] The OLF was established in Ethiopia in July 1973. As the most recent manifestation of resistance to central government control, the OLF is in the tradition of the Azebo–Raya revolt of 1928–30, the Oromo Independence Movement of 1936, and the Bale revolt of 1964–70. The OLF's stated goal is autonomy or independence for the southern provinces of Ethiopia, known by OLF partisans as Oromoland.[2] While the Oromo (Galla) people, Ethiopia's largest ethnic group comprising close to forty percent of the population, are dispersed throughout the country, the southern provinces are considered their heartland. The Oromo penetrated Ethiopia from the south in the fifteenth and sixteenth centuries, and by 1600 established control over the regions they inhabited. Not until the late nineteenth century were they conquered by the Kingdom of Ethiopia. While many Oromo assimilated with the politically dominant Amhara, the Oromo possess distinct physical characteristics and have their own language.

The OLF first began operations against the Ethiopian government in Harrege province in 1974. These actions continued when it became apparent that the *Dirg*, the Provisional Military Administration Council of the Ethiopian government, would not allow use of the Oromo language in newspapers or at school and when the group was prevented from running its own peasant association. While operations spread to Welega province, the OLF apparently had only scattered successes in the late 1970s and early 1980s. Its inability to mobilize popular support has been attributed to a failure "to organize an effective antigovernment movement, to con-

1. The U.S. State Department studies cited in this opinion, although not considered in the administrative proceedings, provide a general historical background of the relationship of the OLF and the Ethiopian Government. We make reference to these studies in this part of our opinion only in terms of providing a general background for petitioner's claim to asylum.

2. The OLF initially called for the "total liberation of the entire Oromo nation from Ethiopian colonialism." Thomas P. Ofcansky & LaVerle Berry, U.S. Dep't of State *Ethiopia: A Country Study* 247 (1993). Later, it worked "for the establishment of an independent Democratic Republic of Oromia, which would include all of central and southern Ethiopia, excluding the Ogaden and Omo River regions." *Id.*

vince the majority of Oromo people that separation was a viable political alternative, or to sustain military operations in ... geographically separated areas." Thomas P. Ofcansky & LaVerle Berry, U.S. Dep't of State *Ethiopia: A Country Study* 247 (1993). From 1989–91 the OLF achieved more success than it previously had in the struggle against the Mengistu regime, although at least some of this was attributable to the support of other resistance groups, including the Tigray People's Liberation Front (TPLF) and the umbrella Ethiopian People's Revolutionary Democratic Front (EPRDF), of which the TPLF is a major constituent.

After the fall of the Mengistu government in 1991, the OLF, the EPRDF, and other groups formed a coalition regime. "Relations between the OLF and the EPRDF," however, "seem to have been ambivalent even at the best of times because the Oromo were deeply suspicious of the ultimate designs of the Tigrayan leadership." Ofcansky & Berry, *supra*, at 311. In June 1992, the OLF withdrew from the coalition government due to alleged EPRDF intimidation of its members and manipulation of the regional election process. According to a State Department report that Makonnen has called to our attention, and which she wishes to have the Board consider, the regional elections

> were flawed by numerous irregularities, including fraud, harassment, intimidation, and political assassination—and the OLF forces took up arms against the Government. In subsequent clashes, the EPRDF forces defeated the OLF units and, at the beginning of 1993, the [Transitional Government of Ethiopia] held more than 20,000 OLF prisoners in several camps. During 1993 most of these detainees were released; the remaining 1,200 are to face criminal charges. The OLF remains outside the Government; much of its senior leadership is abroad.

U.S. Dep't of State, *Ethiopia Human Rights Practice, 1993* [1] (Jan. 31, 1994) (citation omitted). This, then, is the general background for petitioner's claim to asylum.

### III.

Petitioner first contends that the Board erred in applying a stricter standard to her asylum claim than that mandated by law. She also asserts that the Board erroneously rejected her claim based on political opinion because she has not shown that all ethnic Oromos are being persecuted. We combine these contentions for purposes of our discussion. Both Makonnen and the Board agree that the "well-founded fear" standard for asylum under 8 U.S.C. § 1101(a)(42) (1988), set out in *INS v. Cardoza–Fonseca*, 480 U.S. 421, 448–49, 107 S.Ct. 1207, 1221–22, 94 L.Ed.2d 434 (1987), is less stringent than the "more likely than not" requirement for withholding of deportation under 8 U.S.C. § 1253(h). Both cite the Board's opinion, which in turn cited *Matter of Mogharrabi*, 19 I. & N. Dec. 439 (1987), to the effect that "[a]n applicant for asylum has established a well-founded fear if he shows that a reasonable person in her [sic] circumstances would fear persecution for one of the five grounds specified in the Act," namely, race, religion, nationality, membership in a particular social group, or political opinion. *In re Makonnen*, No. A29 466 150, Order at 3 (Nov. 18, 1993), *quoted in* Brief for Respondent at 23 and *cited in* Brief of Petitioner at 24.

 Use of the appropriate standard by the Board is a question of law, which we review *de novo*. In its own review of the case, the BIA noted that

> [t]he immigration judge determined that the respondent failed to sustain the burden of proof and so denied the requested relief.... Following [a] recitation of the respondent's evidence, the immigration judge ... made an adverse credibility finding.... The immigration judge also concluded that the respondent had not established a well-founded fear of persecution within the meaning of the Act. The immigration judge found that her fear stemmed from the general ethnic conflict in Ethiopia and such did not demonstrate a well-founded fear of persecution.

*In re Makonnen*, No. A29 466 150, Order at 3. The Board concurred with the Immigration Judge's findings, specifically noting that Makonnen "fears the overall ethnic conflict in Ethiopia and such does not demonstrate a well-founded fear of persecution within the

meaning of the Act unless there is some evidence that [Makonnen] will be singled out for persecution or that all members of the Oromo ethnic group are being persecuted." *Id.* at 4–5. Makonnen suggests that this is where the Board erred. Her position is supported by 8 C.F.R. § 208.13(b)(2)(i) (1994),[3] which states that

> [i]n evaluating whether the applicant has sustained his burden of proving that he has a well-founded fear of persecution, the Asylum Officer or Immigration Judge shall not require the applicant to provide evidence that he would be singled out individually for persecution if:
>
> (A) He establishes that there is a pattern or practice in his country of nationality or last habitual residence of persecution of groups of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and
>
> (B) He establishes his own inclusion in and identification with such group of persons such that his fear of persecution upon return is reasonable.

■ The regulations do not define what constitutes a "pattern or practice ... of persecution." We would take this language to mean something on the order of organized or systematic or pervasive persecution. In any event, we believe that for the Board to construe the regulation to require a showing of persecution of all the members of the applicant's group represents an unreasonable reading of the "pattern or practice" language. The BIA thus was incorrect as a matter of law in holding that, if Makonnen is unable to show she would be singled out for persecution, her claim for asylum must fail unless there is evidence that all members of the ethnic Oromo group (or of the OLF) are being persecuted.

■ The Board also failed to consider whether Makonnen might have a well-founded fear of persecution even if she is unable to establish a pattern or practice of persecution of the Oromo people or of the OLF. The

Ninth Circuit has noted that 8 C.F.R. § 208.13(b)(2)(i) "does not purport to cover the entire range of persecution related to group membership. Rather, the regulation leaves the standards governing non-pattern or practice cases to be developed through case law." *Kotasz v. INS*, 31 F.3d 847, 853 (9th Cir.1994). In such cases,

> although members of the disfavored groups are not threatened by systematic persecution of the group's entire membership, the fact of group membership nonetheless places them at some risk. That risk can rise to the level required for establishing a well-founded fear of persecution either as a result of an individual's activities in support of the group, or because an individual is a member of a certain element of the group that is itself at greater risk of persecution than is the membership of the group as a whole.
>
> . . . .
>
> In the non-pattern or practice cases, there is a significant correlation between the asylum petitioner's showing of group persecution and the rest of the evidentiary showing necessary to establish a particularized threat of persecution. Specifically, the more egregious the showing of group persecution—the greater the risk to all members of the group—the less evidence of individualized persecution must be adduced.

*Id.* at 853. In the present case, the Board failed to consider the possibility of non-pattern-and-practice persecution.

■ Similarly, the BIA required evidence of persecution of all members of the Oromo ethnic group, yet it appears Makonnen bases her claim primarily on her active membership in the OLF. The government notes that Makonnen stated as part of her asylum application that "[b]eing an Oromo in Ethiopia was the main ground for me and my family's mistreatment by the gov[ernmen]t." Certified Administrative Record at 390. The government argues that Makonnen "did not tell the Board in what 'group' she claimed inclusion," and that "her testimony was peppered

---

**3.** This regulation became effective on October 1, 1990. *See* Asylum and Withholding of Deportation Procedures, 55 Fed.Reg. 30,675 (1990).

with comments about the alleged persecution of the Oromo people." Brief for Respondent at 28. What the government's own brief makes crystal clear, however, is that the petitioner's grasp of English, while certainly better than our grasp of Gallinya,[4] is not sufficiently precise to allow the Board's conclusion "that—when the alien claimed persecution because of her inclusion in a group— she meant inclusion in the Oromo ethnic group." *Id.*[5] Indeed, the close identification between the OLF and the Oromo people makes it probable that an OLF member would fail to maintain a clear verbal distinction between the two. Having reviewed the record, we are satisfied that Makonnen sufficiently apprised the Immigration Judge and the Board that her fear of persecution was based on her connections with the OLF, and not merely on her status as an ethnic Oromo. The Board erred to the extent that its decision rested only on Makonnen's status as an ethnic Oromo, and failed to consider her membership and activities in the OLF.

■ The Board also stated that, "although we do not categorically hold that entitlement to asylum relief can not be established by an individual based upon actions taken following entry into this country, we find that there must be specific evidence that a government would target an individual outside of its borders for persecution." *In re Makonnen*, No. A29 466 150, Order at 5. The BIA has itself commented on the poor quality of the evidence in this case, yet its action here severely restricts the utility of uncontroverted evidence of the petitioner's activities in the United States, which Makonnen has offered as part of her factual showing in support of her claim of a well-founded fear of persecution if she is forced to return to Ethiopia. We hold that the Board's treatment of this evidence was unduly restrictive and reflected an incorrect understanding of the law. Congress, in defining "refugee,"[6] put no limitation on what might constitute evidence of a well-founded fear of persecution. While the Board is "entitled to a presumption of regularity," *see Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), it may not create "new law" under the guise of assessing evidence. In this respect, too, we conclude the Board erred.

We hold that the BIA was incorrect as a matter of law in suggesting that it must be shown that all ethnic Oromos were being persecuted, in not considering the possibility of non-pattern-and-practice persecution, in holding that Makonnen's claim was based entirely on her Oromo ethnicity rather than on her membership in the OLF or her adherence to OLF beliefs, and in requiring specific evidence that the Ethiopian government would target an individual outside its borders for persecution. For these reasons alone, we believe the case must be remanded to the Board for further consideration.

## V.

■ We now turn to the Board's denial of Makonnen's motion that her case be remand-

---

**4.** Gallinya is the Cushitic language of the Oromo (Galla) people. *See Ethiopia in* 10 *Encyclopedia Americana* 620, 623 (1984).

**5.** In support of its contention, the INS cites to Makonnen's testimony at her deportation hearing before the Immigration Judge: Transcript at 20 ("new government is still killing Oromo people"), Transcript at 31 ("there's, uh, some paper that, um, say a lot of killing and people missing going on in the Oromo"), and Transcript at 66 ("they arresting Oromo's people"). While the first presumably refers to the tribal group, the second and third could as easily apply to the region or to the OLF itself. Moreover, within the portions of the record cited by the INS, Makonnen makes numerous references to the OLF and related organizations: Transcript at 24 ("he's active member of Oromo"), Transcript at 25 ("we Oromos ... have ... a group"), Transcript

at 32 (Union of Oromo, North America), Transcript at 35–37 (discussion of the OLF), Transcript at 53–54 (discussion of the OLF), Transcript at 54–55 (discussion of Union of Oromo, North America), Transcript at 55–58 (discussion of the OLF), Transcript at 62 (OLF), Transcript at 64 (OLF), Transcript at 65–66 (OLF).

**6.** According to 8 U.S.C. § 1101(a)(42)(A) (1988) the term "refugee" includes:

any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

ed to the Immigration Judge for consideration of additional evidence. Makonnen also has filed a motion with this Court for leave to adduce her additional evidence under the terms of 28 U.S.C. § 2347(c).[7] The government argues that the standards of federal agency review set forth in § 2347(c) apply only to the extent they do not conflict with the provisions of 8 U.S.C. § 1105a (1988 & Supp. V 1993), which apply specifically to judicial review of final orders of deportation.[8] In this case, according to the government, there is a conflict between the sections.

Section 1105a(a)(4) requires that a petition for review be "determined solely upon the administrative record upon which the deportation order is based...." Section 2347(c) necessarily requires the existence of evidence which is not contained within the administrative record and plainly conflicts with Section 1105a(a)(4) which directs the Court never to look outside the administrative record.

*Makonnen v. INS*, No. 93–4010, Respondent's Opposition to Alien's Motion for Leave to Adduce Additional Evidence at 3 (8th Cir. April 14, 1994) (Respondent's Opposition).

Sister circuits have considered and rejected the government's argument. In *Osaghae v. INS*, the Seventh Circuit held that

[t]here is no inconsistency [between § 1105a and 2347(c) ]. True, we are not to take evidence and base our decision on some mixture of that evidence with the evidence that was before the Board. But

if the administrative record is inadequate because the Board has failed without justification to consider newly discovered evidence, we can remand for the creation of an adequate record.

*Osaghae v. INS*, 942 F.2d 1160, 1162 (7th Cir.1991); *see also Fleurinor v. INS*, 585 F.2d 129, 132 (5th Cir.1978); *Coriolan v. INS*, 559 F.2d 993, 1003 (5th Cir.1977). We here adopt the reasoning in *Osaghae* and hold that 8 U.S.C. § 1105a does not preclude a remand to the Board under 28 U.S.C. § 2347(c).

█ Utilizing the criteria enunciated in 28 U.S.C. § 2347(c), we observe that any additional evidence sought to be introduced must be material, and reasonable grounds must be shown for the initial failure to adduce it before the agency. The first piece of additional evidence proffered by Makonnen is a four-page letter dated January 22, 1994, written to Makonnen by her father, Makonnen Daka. This was penned upon his release from a twenty-one month incommunicado detention by the Ethiopian government, and details the facts of his seizure, holding, and release. Makonnen argues that the letter is material, bearing precisely on "the likelihood of Makonnen's being subject to persecution if forced to return to Ethiopia.... [T]he treatment of relatives, particularly immediate family members who share one's political beliefs, is highly material to one's own likelihood of persecution." *Makonnen v. INS*, No. 93–4010, Reply of Elizabeth Makonnen to Respondent's Opposition to Alien's Motion

7. 28 U.S.C. § 2347(c) (1988) states:

If a party to a proceeding to review applies to the court of appeals in which the proceeding is pending for leave to adduce additional evidence and shows to the satisfaction of the court that—

(1) the additional evidence is material; and

(2) there were reasonable grounds for failure to adduce the evidence before the agency; the court may order the additional evidence and any counterevidence the opposite party desires to offer to be taken by the agency. The agency may modify its findings of fact, or make new findings, by reason of the additional evidence so taken, and may modify or set aside its order, and shall file in the court the additional evidence, the modified findings or new findings, and the modified order or the order setting aside the original order.

8. 8 U.S.C. § 1105a(a)(4) (1988 & Supp. V 1993) states:

The procedure prescribed by, and all the provisions of chapter 158 of title 28, shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation, heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title or comparable provisions of any prior Act, except that—

....

(4) ... except as provided in clause (B) of paragraph (5) of this subsection, the petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive.

for Leave to Adduce Additional Evidence at 6–7 (8th Cir. June 9, 1994) (Reply to Respondent's Opposition). The INS argues that petitioner, "whose asylum claim is premised on her cooking, day secretarial work and babysitting for the OLF in the United States[,] is not similarly situated to her father," and points out that no evidence had been presented of any persecution of Makonnen's mother or other family members. *Makonnen,* Respondent's Opposition at 5.

■ The issue of materiality has come before this Court in a similar context on a prior occasion, in *Alsheweikh v. INS,* 990 F.2d 1025 (8th Cir.1993). In that case we rejected the proffered additional evidence because of its "inconclusive, speculative, or duplicative" nature. *Id.* at 1027. Materiality requires both relevance to the matter at hand and probative value. Moreover, the evidence should be more than merely repetitive or cumulative of evidence already in the record. Here the letter relates to a member of Makonnen's immediate family who, like the petitioner, has espoused the political views of the OLF and has been active in the OLF's cause. The variance between the services performed by Makonnen Daka and those rendered by his daughter for the OLF does not affect the materiality of the letter under consideration in view of their familial relationship, similar political views, and active participation in the OLF. The letter is relevant to Makonnen's claim for asylum and probative on the issue of whether she has a well-founded fear of persecution. It does not duplicate prior evidence and is not inconclusive or speculative. We believe it clearly passes the materiality test.

*Alsheweikh* held that reasonable grounds for failure to present relevant evidence were not shown as the evidence involved "was readily available during [the] deportation proceedings." *Id.* Here, the letter from Makonnen's father could not have been in her possession at the time of the hearing, not only because of the date on which it was written, but because of an underlying cause, Makonnen Daka's incommunicado detention. As the statutory standards have been satisfied, we grant leave under 28 U.S.C.

§ 2347(c) for petitioner to adduce this evidence.

■ Petitioner further seeks to adduce as evidence the United States State Department Country Report on Ethiopia of February 1, 1994, "addressing, inter alia, the current treatment in Ethiopia of persons who support the Oromo Liberation Front." *Makonnen,* Reply to Respondent's Opposition at 2. Conversely, the government merely argues that the reports " 'do not establish that [Makonnen] ha[s] a well-founded fear of political persecution.' " Respondent's Opposition at 6 n. 4 (quoting *Alsheweikh,* 990 F.2d at 1027) (alteration in Respondent's Opposition). In *Alsheweikh,* however, the evidence of political dissident persecution was rejected because "Alsheweikh testified under oath that he did not belong to any political organizations." *Alsheweikh,* 990 F.2d at 1027. Here, Makonnen is an acknowledged member of the OLF, and the evidence she proffered relates to the treatment in Ethiopia of those who support that organization. The report is relevant, has considerable probative value, and does not duplicate material already in evidence. We hold that it is material. As in the case of Makonnen Daka's letter, the date of the report shows that it was not available to Makonnen during her deportation proceedings. Again, we conclude that Makonnen is entitled to have this evidence considered by the agency.

Makonnen's motion for leave to adduce additional evidence pursuant to 28 U.S.C. § 2347(c) is granted. In light of this ruling, we decline to decide whether the Board abused its discretion by denying Makonnen's motion that her case be remanded to the Immigration Judge. On remand from this Court, we leave to the Board's sound discretion the question whether the case should be remanded to the Immigration Judge for initial consideration of Makonnen's additional evidence.

## VI.

The conclusions we have reached concerning the issues discussed above make it unnecessary for us to address the other issues Makonnen has raised. For the reasons stated, we grant Makonnen's motion to adduce

her additional evidence, grant her petition for review, and remand this case to the Board for further proceedings consistent with this opinion.