**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2243

_____

| | |
|---|---|
| Wolde Amanuel Feleke, | * |
| | * |
| Petitioner, | * |
| | * Petition for Review of an Order of the |
| v. | * Immigration and Naturalization Service. |
| | * |
| Immigration and Naturalization | * |
| Service, | * |
| Respondent. | * |

_____

Submitted: February 13, 1997
Filed: July 1, 1997

_____

Before MAGILL,[1] BEAM, and LOKEN, Circuit Judges.

_____

BEAM, Circuit Judge.

Wolde Amanuel Feleke appeals the denial of his application for asylum and withholding of deportation by the Board of Immigration Appeals. We remand for further proceedings.

---

[1]The Honorable Frank J. Magill was an active Judge at the time this case was submitted and assumed senior status on April 1, 1997, before the opinion was filed.

## I.  BACKGROUND

Feleke is Ethiopian.  He contends he will be subject to persecution if he is deported.  By way of background, Ethiopian Emperor Haile Selassie was overthrown by a coalition of opposition groups in 1974.  A Marxist/Leninist regime led by Mengistu Haile Mariam (Mengistu) gained power after an intense period of violence known as the "Red Terror."  Mengistu remained in power until 1991, at which time the Ethiopian People's Revolutionary Democratic Front (EPRDF) took power after a lengthy civil war.  The EPRDF then established the Transitional Government, a coalition of several groups dominated by the EPRDF, which remains in power today.

Feleke left Ethiopia in 1973 to study medicine in Greece.  He remained in Greece until 1989, except for a one-year residency in Germany in 1982-1983 and a one-month visit to Ethiopia in 1987.  He entered this country on a visitor visa in 1989. He is a medical doctor, fluent in six languages, and is presently employed as a translator at the Mayo Clinic in Rochester, Minnesota.  Feleke is associated with an umbrella group, the Coalition of Ethiopian Democratic Forces (COEDF), that opposes the Transitional Government.  He joined the group at its inception in Baltimore in 1990 and remains active in the group.

Feleke first applied for asylum in 1991.  His application was denied and he did not appeal that denial.  In 1993, he was served with an order to show cause why he should not be deported.  He had a hearing before an Immigration Judge in April 1994 at which he was represented by counsel.  Feleke admitted deportability but sought asylum.

At the hearing, Feleke testified that he fears imprisonment or assassination on his return to Ethiopia because of his affiliation with COEDF.  He also testified that the current Ethiopian regime persecutes members of his ethnic group, the Amharas.  He further testified, however, that he has never been arrested, detained, or threatened with

arrest or detention.  Feleke's mother, brother, and sisters still live in Ethiopia and have not reported any threats or any instances of people coming to look for him.  His family has not been threatened.

The record shows that shortly before the hearing, several hundred anti-government activists, not including Feleke, were invited to Ethiopia for a peace conference.  On arrival in Ethiopia, seven of those individuals, all COEDF members, were detained by the Transitional Government and were imprisoned for two months.  Six of them were freed when they renounced violence.  One of the detainees apparently remains in prison in Ethiopia.  This episode was the subject of much discussion at the hearing.  The Immigration Judge independently reviewed online news sources to ascertain the fate of the detainees and to understand the relationship between COEDF and the Transitional Government.  The record additionally contains numerous exhibits including miscellaneous articles and reports about Ethiopia.  Also part of the record is Feleke's earlier asylum application, that, instead of focusing on his affiliation with the opposition groups, relied on a friendship with an official of the former regime as the basis for his fear of persecution.

An Immigration and Naturalization Service (INS) asylum officer also testified at the hearing.  He stated that he had investigated Feleke's application for asylum and recommended that it be denied.  He relied on Amnesty International Country Reports, State Department Country Reports and other human rights publications in making that determination.  Those documents were admitted into evidence and are part of the record.

After reviewing the evidence, the Immigration Judge found that Feleke had not established eligibility for asylum.  He found that Feleke failed to prove that his affiliation with the opposition groups would cause him hardship if he returned to Ethiopia.  Although the Immigration Judge found that conditions in Ethiopia were far from ideal, the evidence did not show any particularized danger of persecution to a

COEDF activist, like Feleke, who renounced violence and who had not been part of the Mengistu terrorist regime. Accordingly, he denied the application for asylum. Feleke's counsel then withdrew his representation and Feleke appealed to the Board of Immigration Appeals (Board).

Feleke filed a pro se letter brief to the Board, along with additional evidence that had not been presented to the Immigration Judge. That evidence consists of several articles regarding the political situation in Ethiopia and a letter dated October 4, 1993 showing that Feleke is a member of the Ethiopian Medhin Democratic Party (MEDHIN), another group opposed to the Transitional Government. The Board declined to consider that evidence. It found that Feleke had not shown that the evidence was unavailable before the hearing and he was bound by his attorney's tactical decision not to present it. Although Feleke had not filed a motion to reopen the proceedings, the Board further found that if it were to consider the evidence in the context of a motion to reopen, the evidence would not warrant reopening the proceedings. The Board affirmed the denial of asylum for essentially the same reasons set forth in the Immigration Judge's decision. It determined that the State Department Country Reports comported with the Immigration Judge's findings that Feleke was not likely to suffer persecution as long as he did not advocate violence and had had no involvement with the Mengistu regime.[2]

On appeal, Feleke contends that the Board abused its discretion in refusing to consider the additional evidence. Feleke has also filed two motions in connection with his appeal: a motion to adduce additional evidence; and a motion to adduce evidence regarding suspension of deportation. Those motions will be considered with the merits of Feleke's appeal.

_____

[2]In finding that the State Department Country Reports relied on by the Immigration Judge called for the same conclusion with regard to MEDHIN membership as to COEDF membership, the Board actually considered the "new" evidence.

## II.  DISCUSSION

### A.  Denial of Asylum

Feleke's appeal principally challenges the Board's refusal to consider additional evidence.  Because that issue is inextricably intertwined with the merits of Feleke's application for asylum, we will consider the merits.  An application for asylum is a matter statutorily vested in the discretion of the Attorney General, acting through the Board.  Nyonzele v. INS, 83 F.3d 975, 979 (8th Cir. 1996).   Therefore, our review of the denial of asylum is limited to determining whether there has been an abuse of discretion.  Id.  Similarly, our review of the denial of a motion to reopen is limited to determining whether the denial was an abuse of discretion.  Aiyadurai v.  INS, 683 F.2d 1195, 1199 (8th Cir.  1982).  An abuse of discretion occurs if a decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim.  Nyonzele, 83 F.3d at 979.

An asylum applicant bears the burden of demonstrating statutory eligibility for asylum by showing that a reasonable person in his or her position would have a well-founded fear of persecution on account of  race, religion, nationality, membership in a particular social group, or political opinion.  INS v. Cardoza-Fonseca, 480 U.S. 421, 423 (1987).   A well-founded fear is one that is both subjectively genuine and objectively reasonable.  Nyonzele, 83 F.3d at 981.  Subjectively, the alien must demonstrate with credible evidence that he genuinely fears persecution; objectively, he must demonstrate through credible, direct, and specific evidence that a reasonable person in his position would fear persecution.  Id.  Fears of economic hardship or lack of opportunity do not establish a well-founded fear of persecution.  Minwalla v. INS, 706 F.2d 831, 835 (8th Cir. 1983).  Even attacks on family members, absent a pattern of persecution tied to the applicant, do not establish a well-founded fear of persecution; nor do isolated acts of violence.  Nyonzele, 83 F.3d at 982-83.

An applicant for asylum must generally show an objectively reasonable basis for a present fear of particularized persecution on the basis of his political opinion. See id. at 983. Absent any evidence of particularized persecution, an applicant nonetheless may obtain asylum if he can show: (1) a pattern or practice in his native country of persecution of groups of persons similarly situated to him on account of their political opinions; and (2) his own inclusion in and identification with that group of persons such that his fear of persecution upon return is reasonable. Makonnen v. INS, 44 F.3d 1378, 1383 (8th Cir. 1995). A "pattern or practice" of persecution is "something on the order of organized or systematic or pervasive persecution." Id. In addition, an applicant may prove a well-founded fear of persecution even without showing a pattern or practice of persecution in cases where "the more egregious the showing of group persecution--the greater the risk to all members of the group--the less evidence of individualized persecution must be adduced." Id.

The Board's decision that an alien is not eligible for asylum must be upheld if supported by reasonable, substantial and probative evidence on the record considered as a whole. Nyonzele, 83 F.3d at 981. We are not at liberty to reweigh the evidence. Id. In order for us to overturn a finding that an alien is not eligible for asylum, the alien must demonstrate to us that the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution. Id.

We find that the Board's determination is supported by substantial evidence on the record as a whole. Although Feleke has shown that there is political unrest, general ethnic conflict, and some intolerance of opposition views in Ethiopia, he has not shown an objectively reasonable basis for a present fear of particularized persecution on the basis of his political opinions. He has shown that other COEDF members have been detained, but he has not shown that his situation, or his position in the opposition movement, is similar to those that have suffered persecution. There has similarly been no showing of a "pattern or practice" of persecution in this case. Feleke has shown that of the several hundred anti-government activists invited to Ethiopia for a

-6-

conference in 1992, only seven were arrested and only one of those remains detained. As for that individual, there are unrefuted allegations that he committed crimes against humanity in the Mengistu regime and is being held for that reason. We agree with the Board's conclusion, based on the evidence presented to it, that Feleke did not show an objectively reasonable threat of persecution to COEDF members who have not advocated violence or played a role in the terrorist regime. Nor did Feleke show egregious group persecution so as to lessen the amount of evidence of individualized persecution required. See Makonnen, 44 F.3d at 1383. Here, Feleke has shown tension between certain factions of COEDF and the Transitional Government, but has not shown that he is affiliated with those factions.

Accordingly, we find no abuse of discretion by the Board in its denial of asylum based on the evidence presented to it. The materials presented to the Board did not show the requisite objective fear of particularized persecution--either as to Feleke individually or as to COEDF as a group. However, because it now appears that Feleke may have new evidence of such particularized persecution and of worsening conditions in Ethiopia, see infra at __, we remand for further proceedings.

## B. Motion to Adduce Additional Evidence

Feleke seeks to supplement the record with additional evidence that was not considered by the Board. Although we are not to take evidence, we may remand to the Board to consider newly discovered evidence and to create an adequate record. 28 U.S.C. § 2347(c); Makonnen, 44 F.3d at 1385. Any additional evidence sought to be adduced must be material and reasonable grounds must be shown for the initial failure to adduce such evidence to the agency. Id.

We find that Feleke has satisfied these conditions. The proffered evidence includes articles discussing increasing persecution and violence by the Transitional Government toward groups opposed to the current regime. The most significant

documents are two letters, both dated July 28, 1996, from Mesfin Teferra, an administrator of COEDF, outlining human rights abuses by the Transitional Government and expressing a belief that Feleke would be subject to persecution, as a known COEDF activist, on his return to Ethiopia. Also included is a Department of Justice Profile Report, prepared for use by Asylum Officers and dated December 1994, that discusses increasing violence toward COEDF activists. Also significant, though not so particularized to COEDF, is an Amnesty International report detailing escalating abuses in Ethiopia. This evidence of changing conditions in Ethiopia is relevant to Feleke's asylum claim. Although neither the Teferra letters nor the Department of Justice report were available until after the hearing, both contain information relating to COEDF in particular. We believe that consideration of this evidence is crucial to the development of an adequate record in this case. Accordingly, we remand to the Board pursuant to 28 U.S.C. § 2347(c). See Makonnen, 44 F.3d at 1385.

## C. Motion to Adduce Evidence Regarding Suspension of Deportation

In this motion, Feleke seeks to adduce evidence on the issue of his eligibility for suspension of deportation. He argues that while his appeal has been pending, he has become eligible, by virtue of continuous residence in the United States for more than seven years, for suspension of deportation. The law governing suspension of deportation, which is now called cancellation of removal, was amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which took effect on April 1, 1997. Under the earlier statute, an alien was generally eligible for suspension of deportation if: (1) he had been physically present in the United States for more than seven years; (2) he was of good moral character; and (3) he could show extreme hardship if he were to return to his country. 8 U.S.C. § 1254 (a)(1) (Supp. 1996). IIRIRA toughens the requirements for cancellation of removal in that it lengthens the required period of continuous residence in the United States from seven to ten years. 8 U.S.C. § 1229b(b)(1)(A) (Supp. 1997). It also provides that calculation of that time period excludes any time spent in the United States after the initiation of

deportation proceedings. 8 U.S.C. § 1229b(d)(1) (Supp. 1997). This latter provision applies to motions for suspension filed before, on, or after the effective date of the statute. See IIRIRA § 309(c)(5), Div. C of Pub. L. No. 104-208, 110 Stat. 3009.

We must first address the issue of jurisdiction since this motion has not been presented to the INS. We have jurisdiction to review all final orders of deportation. Nyonzele, 83 F.3d at 979. Our review includes all determinations made during and incident to the administrative proceeding such as denials of asylum, hardship waivers or voluntary departures. Id. If no final order exists, however, we have no jurisdiction to consider an issue. Minwalla, 706 F.2d at 834. Because there has been no action by the Board on the issue of Feleke's eligibility for suspension of deportation, we are without jurisdiction to consider it. This matter, including whether and to what extent IIRIRA is applicable to Feleke, is for the Board to consider in the first instance.

## III.  CONCLUSION

For the foregoing reasons, this action is remanded to the Board for further proceedings consistent with this opinion.

Loken, Circuit Judge, dissenting:

I respectfully dissent. After concluding, correctly in my view, that the administrative record contains substantial evidence supporting the agency's final action, the court remands for consideration of two unsworn letters that were never presented to the agency and indeed were not written by the author, an Ethiopian political activist, until after the Board of Immigration Appeals decision under review. In my view, this use of 28 U.S.C. § 2347(c) goes far beyond our decision in Makonnen v. INS, 44 F.3d 1378 (8th Cir. 1995), and impermissibly encroaches upon the agency's discretion to decide in the first instance whether a final action should be reopened. See INS v. Jong Ha Wang, 450 U.S. 139, 143 n.5 (1981); Osaghae v. INS, 942 F.2d 1160, 1162 (7th

Cir. 1991); Ramirez-Gonzalez v. INS, 695 F.2d 1208, 1213-14 (9th Cir. 1983). Accordingly, I would deny the motion for leave to adduce additional evidence and affirm.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.