**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LIYOUWORK SAHLEMARIAM,
Petitioner,

v.

No. 97-2662

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

YALEMZEWD GIZACHEW,
Petitioner,

v.

No. 97-2663

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petitions for Review of Orders
of the Board of Immigration Appeals.
(A70-796-083, A70-662-642)

Submitted: April 21, 1998

Decided: July 17, 1998

Before WILKINS, NIEMEYER, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William H. Rhodes, Arlington, Virginia, for Petitioners. Frank W. Hunger, Assistant Attorney General, Charles E. Pazar, Senior Litigation Counsel, Margaret Perry, Office of Immigration Litigaton, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this consolidated appeal, Liyouwork Sahlemariam and Yalemzewd Gizachew petition for review of orders of the Board of Immigration Appeals (the "Board") denying their applications for asylum and withholding of deportation but granting voluntary departure. Because substantial evidence supports the Board's decisions, we affirm.

Sahlemariam is a twenty-seven year old female native and citizen of Ethiopia. She entered the United States in 1991 as a non-immigrant student and filed an application for asylum in 1995. Her claim was based upon her Amhara ethnicity and her relationship to her uncle. At the deportation hearing, at which Sahlemariam conceded deportability, the Immigration Judge ("IJ") denied Sahlemariam's petition for asylum and withholding of deportation but granted her application for voluntary departure. The Board reviewed Sahlemariam's claims and dismissed her appeal.

For nearly ten years Sahlemariam lived with her uncle in Ethiopia's capital city of Addis Ababa. Her uncle was Minister of Agriculture and also Minister of Industry under the Marxist regime of Colonel Mengistu Haile Mariam ("Mengistu"). In 1991, the Mengistu govern-

2

ment was overthrown by the Ethiopian People's Revolutionary Democratic Front ("EPRDF"), composed primarily of members of the Tigray ethnic group.

After a new government was installed, Sahlemariam's uncle was arrested and still remains incarcerated. Sahlemariam's home was ransacked by government soldiers searching for documents relating to her uncle's governmental service. Sahlemariam was arrested and detained for anywhere from three to seven days. During that period, she was questioned regarding her knowledge of her uncle's activities and records. On one occasion, she was threatened with a knife and told that she would be killed if she did not turn over her uncle's documents. Sahlemariam was released and instructed to report to government officials once every week to ensure that authorities would be able to locate her. Shortly thereafter, Sahlemariam was issued a passport, left the country and came to the United States. Sahlemariam received a letter from her uncle in which he stated that he told government officials that Sahlemariam had copies of the documents officials were looking for. According to the uncle, as a result of his disclosure to government officials, Sahlemariam's name and picture were distributed to other government agencies.

Still in Ethiopia are Sahlemariam's mother and five siblings. A brother has completed his studies at a university. A sister has been dismissed from her job purportedly because she is Amharan. Once in the United States, Sahlemariam joined the Coalition of Ethiopian Democratic Forces ("COEDF").

Gizachew is a twenty-seven year old female native and citizen of Ethiopia and a member of the Amhara ethnic group. She entered the United States in 1993 as a non-immigrant visitor for pleasure. The United States Immigration & Naturalization Service ("INS") began deportation proceedings against her by issuing an order to show cause, charging her with deportability for having remained longer than permitted. At the deportation hearing, Gizachew conceded deportability and applied for relief from deportation in the form of asylum and withholding of deportation. The IJ concluded that Gizachew had failed to testify credibly as to the basis of her fear of persecution if she returned to Ethiopia and denied her requested relief. On

3

appeal, the Board adopted the IJ's adverse credibility findings and dismissed the appeal.

Gizachew contends the following: after the overthrow of the Mengistu government, she was dismissed from her position at a pharmacy because she was Amharan. Three months later, she returned to protest her dismissal. Police arrested her and detained her for two weeks. During her detention, she was interrogated, slapped, pushed around, and beaten with fists and sticks. As a result, she was heavily bruised. Gizachew's father is a member of the All Amhara People's Organization, an opposition party to the new government. In 1992, he was fired from his position and arrested.

To establish a prima facie case for asylum, a person must show that she has a well-founded fear of persecution, or a showing of past persecution, as a result of her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); see also Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir. 1992). To demonstrate a "well-founded fear of persecution," an individual must show that a reasonable person under these circumstances would fear persecution and that the fear has some basis "in the reality of the circumstances" validated with "specific concrete facts." Id.

We must uphold the Board's decision if it is supported by substantial evidence from the record as a whole. See Huaman-Cornelio, 979 F.2d at 999. We reverse the Board only if the evidence presented by the petitioner "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

I.

Sahlemariam's primary contention is that she fears persecution based upon her relationship to her uncle. In dismissing Sahlemariam's appeal, the Board determined that her detention was due to a lawful investigation of her uncle's possible complicity in human rights violations brought about by the Mengistu regime. The State Department has noted that the current government is bringing criminal charges against members of the Mengistu regime for crimes against humanity.

4

The Board also found that the current government's purported desire to question her is related solely to the missing government documents.

Furthermore, according to the Board, Sahlemariam's fear of persecution based upon her kinship with her uncle or her ethnicity is not supported by the evidence. A 1995 report issued by the Department of State's Bureau of Democracy states that family members of deposed Mengistu officials do not face harassment or discrimination solely based upon their relationship to the jailed relative. In addition, the Board noted that Sahlemariam was able to obtain a passport in spite of her connection to the deposed regime. Sahlemariam's fear based on her ethnicity is also not supported by the State Department's report which found that an asylum claim based on Amhara ethnic identity "would not be consistent with the country conditions in Ethiopia," and "there is no evidence that the[Transitional Government] is targeting Amharas for severe mistreatment as a particular ethnic group."* Thus, we find that Board's findings are supported by substantial evidence.

II.

In denying Gizachew's application for asylum, the IJ noted numerous inconsistencies within her testimony and in comparison to her application for asylum. Most notably, Gizachew did not mention her father's arrest and imprisonment by the current government in her application. Furthermore, the IJ found Gizachew's testimony regarding her dismissal from the pharmacy was suspect. She remained employed for a period of fourteen months after the new government took power. After she was dismissed, she received a recommendation letter from the pharmacy. In addition, she waited three months to protest her dismissal. The IJ also found that the testimony regarding the

_____

*Sahlemariam contends on appeal that she fears persecution based upon her membership in the COEDF. This contention was not raised on appeal to the Board. An alien's failure to raise an issue before the BIA constitutes a waiver of the issue and precludes review by this court. See Farrokhi v. INS, 900 F.2d 697, 700 (4th Cir. 1990). In any event, it has been found that members of COEDF who renounce violence do not face persecution. See Feleke v. INS, 118 F.3d 594, 598-99 (8th Cir. 1997).

5

details of her purported beatings at the hands of government officials was inconsistent and unsupported by any medical reports.

An IJ's credibility determination is granted substantial deference and is reviewed under a substantial evidence standard. See Figeroa v. INS, 886 F.2d 76, 78 (4th Cir. 1989) (stating that an IJ who rejects a witness' positive testimony based on a lack of credibility should offer specific reasons for disbelief). In Gizachew's case, the IJ offered several concrete examples of inconsistencies and missing details which led to his conclusion that her testimony was not credible. Gizachew contends that the inconsistencies were not material. Yet, her request for asylum is primarily based upon an allegation that her family has faced persecution. However, she failed to mention her father's arrest and detention in either her asylum application or her affidavit accompanying the affidavit. Furthermore, the IJ found the testimony of Gizachew's own alleged persecution to be unbelievable because the details kept changing. We find these are material inconsistencies. Accordingly, we conclude that substantial evidence supports the IJ's findings and the Board's dismissal of her appeal.

We find no reason to reverse the Board's decision in either appeal. We therefore affirm the decisions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6