# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4405

_____

Yacoub Quomsieh; Muna Quomsieh;   *
Hanin Quomsieh; Nadeen Quomsieh;   *
Balquees Quomsieh; Jeries Quomsieh;   *
Danial Quomsieh,   *
  *
      Petitioners,   *
  *   Petition for Review from the
   v.   *   Board of Immigration Appeals.
  *
  *
Alberto Gonzales, Attorney General   *
of the United States of America,   *
  *
      Respondent.   *

_____

Submitted: December 13, 2006
Filed: March 15, 2007

_____

Before WOLLMAN, RILEY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Yacoub and Muna Quomsieh and their children, Hanin, Nadeen, Balquees, Jeries, and Danial Quomsieh, who are Palestinian Christians, petition for review of a final per curiam order of removal of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ") to deny their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the reasons discussed below, we deny the Quomsiehs' petition.

Mr. Quomsieh entered the United States on January 31, 2001, with authorization to remain until July 30, 2001; Mrs. Quomsieh and the children entered the United States on June 19, 2001, with authorization to remain until December 19, 2001. All remained beyond their authorization dates without permission. Mr. Quomsieh and his family filed an application for asylum on January 22, 2002.

At a merits hearing conducted before the IJ on April 27, 2004, the Quomsiehs contended that, while living in the West Bank, they were persecuted by Muslims because of their Christian faith and were persecuted by Israeli soldiers because of their Palestinian nationality. The Quomsiehs testified to several incidents they claim constituted persecution, including harassment and threats Mrs. Quomsieh received from Muslim parents of students she taught, Israeli soldiers forcing Mr. Quomsieh to remove rocks and burned tires from the streets following Palestinian demonstrations, Mrs. Quomsieh being overcome by tear gas fumes when a stray canister fired by Israeli soldiers landed on the balcony of the Quomsiehs' home, Israeli soldiers entering and ransacking the Quomsieh's home, Palestinian Authority officials unfairly taxing Mr. Quomsieh's business, threats received from Muslims who disapproved of Mr. Quomsieh's employment at a casino, and harassment and intimidation that the Quomsiehs' daughters received from Muslim men. The Quomsiehs also testified to other incidents of persecution suffered by extended family. Mrs. Quomsieh's parents' home burned after it was hit by mortar shells from crossfire between Palestinian Muslims and Israeli forces, Muslims attacked Mr. Quomsieh's brother's family at the brother's home during a barbeque where alcohol was served, and Muslims confiscated land belonging to Mr. Quomsieh's father.

Further, Mr. Quomsieh testified about an incident that occurred in 1988 after Israeli forces imposed a curfew in the West Bank. Mr. Quomsieh testified that he violated the curfew in an effort to obtain medication for an ill child. When he was discovered, Israeli soldiers took him to a checkpoint and detained him there. The

soldiers forced Mr. Quomsieh to stand on one leg while holding his hands out. When he lowered the raised leg or moved, the soldiers would beat him. One of the soldiers then tied Mr. Quomsieh's hands behind his back, and the soldiers beat him with their rifles. Mr. Quomsieh was detained for four hours, until a higher-ranking Israeli soldier arrived at the checkpoint and ordered his release. The following day, Mr. Quomsieh sought medical care and learned he had suffered a cracked joint in his right knee.

In 1996, Mr. Quomsieh testified that his first cousin, Fayez Quomsieh ("Fayez") was arrested by the Palestinian Authority and accused of being an Israeli collaborator. Fayez was never convicted of a crime, and he eventually died in Palestinian Authority custody. While the Palestinian Authority claimed Fayez's death was a suicide, there was evidence he had been tortured, as well as evidence his death was due to a heart attack caused by the torture. Mr. Quomsieh testified Fayez was killed because he was a Christian.

The IJ found that, although the petitioners were credible witnesses, the evidence presented did not establish that the Quomsiehs had been persecuted because of their religion or nationality, rather the IJ found that the Quomsiehs left the region for general security reasons. The IJ noted that most of the incidents described by the Quomsiehs–including the alleged beating by Israeli soldiers and the cousin's death while in Palestinian Authority custody–occurred prior to Mr. Quomsieh's 1999 trip to the United States to attend a nephew's wedding, from which Mr. Quomsieh returned to the West Bank because he was "making good money at the casino." Because Mr. Quomsieh testified he would not return to the West Bank, the IJ could not find by clear and convincing evidence that the Quomsiehs would voluntarily depart, and thus the IJ denied voluntary departure. In a per curiam order, the BIA affirmed the IJ's credibility finding and held that the incidents described by the Quomsiehs were insufficient–singularly or cumulatively–to rise to the level of persecution. The BIA further held that the Quomsiehs demonstrated a subjective fear

of returning to the West Bank but had failed to show their fear was objectively reasonable.

The Quomsiehs contend on appeal that (1) the IJ and BIA erred in denying their application for asylum, withholding of removal, and protection under CAT because they established past persecution and a well-founded fear of future persecution, (2) the record evidence supports a finding that they would more likely than not suffer torture if removed, and thus they are entitled to relief under CAT, and (3) the BIA failed to review the IJ's denial of voluntary departure, therefore the matter should be remanded to the BIA for proper consideration.

We review a BIA's factual decision under the substantial evidence standard, reversing where petitioners demonstrate "that the evidence was so compelling that no reasonable fact finder could fail to find in favor of the petitioner[s]." Turay v. Ashcroft, 405 F.3d 663, 667 (8th Cir. 2005); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). Where, as here, the BIA adopts the IJ's decision and adds its own reasoning, we review both decisions together. See Setiadi v. Gonzales, 437 F.3d 710, 713 (8th Cir. 2006).

Asylum may be granted to a refugee. 8 U.S.C. § 1158(b)(1)(A). A "refugee" is defined as a person who is outside his native country and is unable or unwilling to return to his native country "because of persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "A well-founded fear is one that is both subjectively genuine and objectively reasonable." Feleke v. INS, 118 F.3d 594, 598 (8th Cir. 1997). Subjectively, the petitioner must demonstrate that he genuinely fears persecution; objectively, the petitioner must show "credible, direct, and specific evidence that a reasonable person in the [petitioner's] position would fear persecution" if returned. See id. Where the petitioner establishes that he was

-4-

subjected to past persecution, there is a presumption of a well-founded fear of future persecution on the same grounds. Francois v. INS, 283 F.3d 926, 930 (8th Cir. 2002). Where past persecution has been established, the burden shifts to the government to show by a preponderance of the evidence that the petitioner no longer has a well-founded fear of persecution due to a change in the conditions of the petitioner's native country. See id. at 930-31.

The BIA determined that petitioners had not suffered past persecution, and that while they had subjectively genuine fears of returning to the West Bank, those fears were not objectively reasonable. While the petitioners described circumstances which are troubling, we cannot say that the evidence is so compelling as to require us to reach the contrary conclusion that petitioners were subjected to persecution. Absent physical harm, the incidents of harassment, unfulfilled threats of injury, and economic deprivation are not persecution. See Woldemichael v. Ashcroft, 448 F.3d 1000, 1003 (8th Cir. 2006) ("Absent physical harm, subjecting members of an unpopular faith to hostility, harassment, discrimination, and even economic deprivation is not persecution unless those persons are prevented from practicing their religion or deprived of their freedom."); Setiadi, 437 F.3d at 713 ("Past persecution does not normally include unfulfilled threats of physical injury . . . ."). Also, incidents arising solely from political unrest are insufficient to show particularized persecution. See Feleke, 118 F.3d at 598 (political unrest and ethnic conflict is not enough to show particularized persecution).

While Mr. Quomsieh's four hour detention and beating by Israeli soldiers is more bothersome, we note, as did the IJ, that this one incident occurred in 1988, and the Quomsiehs continued to live in the West Bank for thirteen more years without suffering another similar incident from the Israeli government. See Alyas v. Gonzales, 419 F.3d 756, 761, 761 n.2 (8th Cir. 2005) ("While any instance of unjustified detention and physical abuse is regrettable, two isolated occurrences of detention and abuse [that were followed by four years without additional problems]

-5-

do not establish that [petitioner] is eligible for asylum because we have also recognized that 'brief periods of detention . . . or isolated violence do not necessarily constitute persecution.'") (quoting Krasnopivtsev v. Ashcroft, 382 F.3d 832, 839 (8th Cir. 2004); citing Ngure v. Ashcroft, 367 F.3d 975, 990 (8th Cir. 2004) and Tawm v. Ashcroft, 363 F.3d 740, 743 (8th Cir. 2004)).

Also, nothing in the record, other than Mr. Quomsieh's assertions at the hearing, supports a finding that Fayez was tortured and killed by the Palestinian Authority because of his religion or that the Palestinian Authority has been targeting Christians for detention and torture. While acts of violence against a family member may demonstrate a well-founded fear of persecution, those acts must be tied to the petitioner through a pattern of persecution such that the petitioner would also reasonably fear persecution. See Nyonzele v. INS, 83 F.3d 975, 983 (8th Cir. 1996) (holding that there was no evidence to tie father's murder for his political beliefs to the petitioner). The petitioners have failed to show that Fayez's torture and subsequent death occurred because of his religion or that the petitioners have an objectively reasonable fear of persecution by the Palestinian Authority because of their religious beliefs.

When a petitioner files an asylum application, a request for withholding of removal is automatically included in the application. 8 C.F.R. § 1208.3(b) ("An asylum application shall be deemed to constitute at the same time an application for withholding of removal . . . ."). In considering a withholding of removal request, the petitioner must show a clear probability of persecution if returned to his native country. Turay, 405 F.3d at 667. This is a more rigorous standard than the well-founded fear standard needed for asylum relief, thus where the petitioner has failed to prove eligibility for asylum, the petitioner cannot meet the standard for establishing withholding of removal. Id. Accordingly, petitioners' withholding of removal claim fails.

-6-

Under CAT, the petitioners must show that "'it is more likely than not that [they] [ ] would be tortured if returned to the proposed country of removal.'" Id. (quoting Ngure, 367 F.3d at 992); 8 C.F.R. § 208.16(c)(2). In considering such a claim, all evidence relevant to the possibility of future torture should be considered, including but not limited to: past torture; the petitioners' ability to relocate to another part of the country where torture is unlikely; and gross, flagrant, or mass violations of human rights. Turay, 405 F.3d at 668. Where a petitioner fails to establish eligibility for asylum, "it is likely that he will not succeed under CAT," and a separate CAT analysis is needed only if petitioner "presented evidence that he is likely to be tortured for reasons unrelated to his asylum claim." Rodriguez v. Gonzales, 441 F.3d 593, 595 (8th Cir. 2006). Because there is no evidence in the record, apart from that presented in support of the asylum claim, showing petitioners would more likely than not be subjected to torture if returned, the BIA and IJ did not err in denying petitioners' CAT claim.

Upon independent review of the record, it is clear that the petitioners did not raise the IJ's denial of voluntary departure before the BIA. This failure to raise the issue before the BIA precludes our review of that voluntary departure determination or whether the BIA erred in failing to analyze the basis for denial. See Frango v. Gonzales, 437 F.3d 726, 728 (8th Cir. 2006) (declining to review claims that IJ was biased and denied petitioner fair hearing where petitioner failed to present those issues to BIA and presented no reason to exempt him from general exhaustion requirement). Even if the issue had been raised before the BIA, we lack jurisdiction to review a denial of voluntary departure. 8 U.S.C. § 1229c(f) (no court shall have jurisdiction to review the denial of voluntary departure); Fofanah v. Gonzales, 447 F.3d 1037, 1040-41 (8th Cir. 2006).

For the foregoing reasons, we deny the petition for relief.

_____