# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2431

No. 21-1659
_____

Guadalupe Barrera Arreguin, et al.

*Petitioner*s

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

_____

Petitions for Review of Orders of the
Board of Immigration Appeals

_____

Submitted: December 15, 2021
Filed: April 4, 2022

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

Guadalupe Barrera Arreguin applied for admission into the United States on behalf of herself and her two minor children, citizens of Mexico, in June 2016. The Department of Homeland Security commenced removal proceedings, charging that they are inadmissable. Barrera Arreguin conceded inadmissibility and applied for asylum, humanitarian asylum, withholding of removal, and CAT protection, claiming

persecution on account of her status as an immediate family member of her husband, Arcenio Hinjoza Mendoza ("Arcenio"), a commander in a local auto-defense group formed to fight organized crime in their hometown, the city of Apatzingan, Mexico. The immigration judge (IJ) denied relief after a hearing. The Board of Immigration Appeals (BIA) dismissed Barrera Arreguin's appeal. She timely petitioned for review. With the petition pending, she moved the BIA to reopen proceedings after two of her brothers-in-law disappeared in Mexico. The BIA denied the motion to reopen, and Barrera Arreguin filed a second petition for review. We consolidated and now deny the two petitions.

## I. Background

Barrera Arreguin testified that Arcenio, a former local police officer, joined the auto-defense group to fight local drug cartels. It was sanctioned as a rural police force by the government of Mexico. A rival group, Los Viagras, became powerful in Apatzingan and turned to organized crime. In September 2014, Los Viagras told Arcenio they would kill his family if the family remained in Apatzingan. They fled to a neighboring town, Buena Vista. Los Viagras burned down their home. After living undisturbed in Buena Vista for several months, Arcenio made a deal with Los Viagras that allowed the family to return to Apatzingan. But after the family returned, Los Viagras resumed its public threatening, driving through town with a megaphone announcing that Arcenio and everyone around him and their animals would be killed if they did not leave Apatzingan. Los Viagras also threatened the family with text messages and in person.

In July 2015, Arcenio disappeared after responding to a call to pick up money from a vehicle sale. A fellow commander disappeared at the same time. Barrera Arreguin filed a disappearance report with the local prosecutor. Military officers briefly investigated but discovered nothing. The family continued to live in Apatzingan. They hung up bed sheets in the town square seeking help to find the

missing commanders. Police took the bed sheets down. It is still not known whether Arcenio is alive. Barrera Arreguin was never threatened or harmed by anyone in Mexico's police or military.

In June 2016, Barrera Arreguin received a call and a follow-up message from an unknown caller warning that "Chanda," part of yet another auto-defense group, was behind Arcenio's disappearance. Arcenio had visited Chanda the day he disappeared. The caller threatened that Barrera Arreguin would disappear like Brenda, the wife of Arcenio's fellow commander who had also disappeared, if Barrera Arreguin did not withdraw her report of Arcenio's disappearance, give them money, and leave Apatzingan. The family fled Apatzingan and soon entered the United States, settling in California.

In the United States, Barrera Arreguin testified that a friend showed her a threatening Facebook message saying "they" knew where she was and would harm her. She did not introduce the message into evidence. The family moved to Kansas City where they lived free of further threats. In Apatzingan, neighbors and family members were questioned about the family's whereabouts, and Los Viagras searched the home of Barrera Arreguin's mother. But her mother and sisters have lived in Mexico without threats or harm. Arcenio's father and sister live in Apatzingan unharmed, as do some of Barrera Arreguin's distant relatives. Her aunts were not harmed when they visited Mexico in 2017.

## II. The Initial Application

The IJ found Barrera Arreguin's testimony credible, recognized Arcenio's immediate family as a cognizable social group, but found in a lengthy Decision and Orders that the past harm Barrera Arreguin and her children described "did not rise to the high level required of past persecution" or justify a well-founded fear of future persecution. Nor did Barrera Arreguin show the required nexus between the harm

-3-

they feared and a protected ground, either their membership in the family social group or Barrera Arreguin's political opinion. The IJ also denied humanitarian asylum, withholding of removal, and CAT relief. The BIA affirmed and then dismissed her administrative appeal. Barrera Arreguin petitioned this court for review of this initial decision. We review the BIA's decision and, "to the extent that the BIA adopted the findings or reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Cano v. Barr, 956 F.3d 1034, 1038 (8th Cir. 2020).

To be eligible for asylum, Barrera Arreguin must show that she is unwilling or unable to return to Mexico "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1)(A), 1101(a)(42). Though we review questions of law de novo, "the ultimate question of past persecution or well-founded fear of future persecution, as well as the findings underlying that determination, are judicially reviewed under the substantial evidence standard that applies to agency findings of fact." He v. Garland, 24 F.4th 1220, 1224 (8th Cir. 2022) (Supreme Court citations omitted). "[T]o obtain judicial reversal of the BIA's determination, [Barrera Arreguin] must show that the evidence [s]he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992); see 8 U.S.C. § 1252(b)(4)(B).

Barrera Arreguin argues the IJ and the BIA erred in finding that she and her children are not eligible for asylum. Applying the proper standard of review, the BIA upheld the IJ's finding that Barrera Arreguin did not present evidence of past harm that rose to the level of past persecution. The BIA found that Barrera Arreguin and her children were never physically harmed in Mexico, the threats against them were isolated, and no one attempted to carry them out. Further, there is insufficient evidence tying Arcenio's disappearance to any particular group -- Barrera Arreguin's testimony that she saw a video in which Los Viagras took credit for killing Arcenio

-4-

"carried insufficient weight, without the video or further corroborating evidence, to establish [Arcenio] was killed by the group." The applicants lived in Apatzingan for a year after the disappearance before receiving a threat to leave the area.

Barrera Arreguin argues the BIA improperly required corroborating evidence of Arcenio's death when her credible testimony should be taken at face value. We disagree. When the IJ determines that an applicant should provide evidence that corroborates credible testimony, this evidence "must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii); see Omondi v. Holder, 674 F.3d 793, 797 & n.1 (8th Cir. 2012). The statute requires that the applicant be afforded "an opportunity to explain [the] unavailability" of corroborating evidence. Uzodinma v. Barr, 951 F.3d 960, 966 (8th Cir. 2020); see Matter of L-A-C-, 26 I. & N. Dec. 516, 521-22 (BIA 2015). Barrera Arreguin was afforded that opportunity when counsel for DHS asked her to explain why she did not provide the video. Her reply -- that she "didn't think about it" -- was not a satisfactory explanation.

We have repeatedly held that "persecution is an extreme concept." Eusebio v. Ashcroft, 361 F.3d 1088, 1090 (8th Cir. 2004). "Absent physical harm, [] incidents of harassment, unfulfilled threats of injury, and economic deprivation are not persecution." Quomsieh v. Gonzales, 479 F.3d 602, 606 (8th Cir. 2007). Though Barrera Arreguin was understandably frightened by threats before and after her husband's disappearance, she and her children continued to live unharmed in Apatzingan and elsewhere in Mexico for a substantial period of time, and other members of her family remained in Mexico unharmed after she fled. On this record, substantial evidence supports the BIA's finding that Barrera Arreguin failed to show past persecution.

Having failed to establish past persecution, Barrera Arreguin and her children are not entitled to a presumption they have a well-founded fear of future persecution.

See 8 C.F.R. § 1208.13(b)(1)(i).  The BIA upheld the IJ's findings that (i) Arcenio's unresolved disappearance did not support an objectively reasonable fear of future persecution; (ii) her mother, her sisters, and Arcenio's father and sister remaining in and near Apatzingan, unharmed, diminishes the reasonableness of her fear; and (iii) Barrera Arreguin failed to establish she could not avoid persecution by reasonably relocating within Mexico.

Barrera Arreguin argues the BIA improperly considered the safety of her husband's "extended family" instead of the proffered social group, his "nuclear family."  This contention is without merit.  First, Barrera Arreguin's application described the relevant social group as Arcenio's "immediate family," which is generally understood as a broader group than a person's "nuclear family."  Compare Immediate Family, *Black's Law Dictionary* (11th ed. 2019), with Nuclear Family, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2007).  At the hearing, counsel for Barrera Arreguin conflated the terms.  Second, the continued lack of harm to members of Barrera Arreguin's immediate and extended families was clearly relevant to her claim of a well-founded fear.  "An alien's fear of persecution is reduced when her family remains unharmed in her native country."  Bernal-Rendon v. Gonzales, 419 F.3d 877, 881 (8th Cir. 2005); see Rivas v. Sessions, 899 F.3d 537, 542 (8th Cir. 2018).  Substantial evidence supports the BIA's finding that Barrera Arreguin did not establish a well-founded fear of future persecution.

Barrera Arreguin further argues the  BIA erred in denying her application for humanitarian asylum, withholding of removal, and CAT relief.  Again, we disagree.  Humanitarian asylum requires a showing of past persecution; "failure to prove persecution on a protected ground makes [Barrera Arreguin] ineligible for humanitarian asylum."  Kanagu v. Holder, 781 F.3d 912, 919 (8th Cir. 2015).  Withholding of removal requires a showing of a "clear probability" of persecution in Barrera Arreguin's home country, Mexico.  Cubillos v. Holder, 565 F.3d 1054, 1058 (8th Cir. 2009).  This standard "is more rigorous than the 'well-founded fear' standard

-6-

for asylum."[1]  Id.  CAT relief requires a showing it is "more likely than not" that Barrera Arreguin will be tortured upon returning to Mexico.  8 C.F.R. § 1208.16(c)(2).  Separate analysis of a CAT claim is required "only when there is evidence that the alien might be tortured for reasons unrelated to her claims for asylum and withholding of removal."  Alemu v. Gonzales, 403 F.3d 572, 576 (8th Cir. 2005).

## III.  The Motion to Reopen

In the motion to reopen and remand, Barrera Arreguin submitted (i) a prosecutor's report of a statement by Arcenio's sister (Barrera Arreguin's sister-in-law) describing the disappearance of her two brothers in June 2020; and (ii) Barrera Arreguin's sworn declaration that the brothers were active in Arcenio's auto-defense group, stayed in Mexico after she left and provided information leading to the detention of Chanda and his boss, were then threatened and "mov[ed] from one place to another" until a new armed group expelled Chanda's cartel and invited them back to the State of Michoacan, "and in little time were murdered."  The declaration concluded that "the fragile justice system in Mexico . . . does not consider the risks for the family members of the commanders."

The BIA denied the motion, correctly noting that motions to reopen are disfavored.  Robles v. Garland, 23 F.4th 1061, 1063 (8th Cir. 2022).  The BIA stated:

> As a general rule, a party who seeks to reopen proceedings to pursue relief bears a 'heavy burden' of proving that if proceedings were

---

[1]We do not consider Barrera Arreguin's argument that the statutory nexus standard for withholding of removal claims is less rigorous than the asylum standard because that issue was not raised before the BIA.  See Silvestre-Giron v. Barr, 949 F.3d 1114, 1118 n.2 (8th Cir. 2020).

reopened, the new evidence would likely change the result in the case.
Matter of Coelho, 20 I. & N. Dec. 464, 472-73 (BIA 1992).

We have approved that standard. See Caballero-Martinez v. Barr, 920 F.3d 543, 548 (8th Cir. 2019). Turning to the merits, the BIA concluded that "the newly proffered evidence would not alter our conclusion that [Barrera Arreguin] has not established the requisite nexus to a protected ground for asylum and withholding of removal under the [Immigration and Nationality] Act, nor a likelihood of being subjected to torture by or with the acquiescence of governmental [] authorities as required for protection under the CAT."

To be eligible for asylum, an applicant must show that a protected ground "was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). In denying the initial application, the BIA affirmed the IJ's "alternative determination that the respondents did not establish a well-founded fear of future harm on account of a protected ground, as we discern no clear error in the [IJ's] factual findings that Los Viagras was motivated by its own criminal goals rather than on account of any protected basis held by [Barrera Arreguin]." We uphold that ruling. See Cambara-Cambara v. Lynch, 837 F.3d 822, 825-26 (8th Cir. 2016).

Barrera Arreguin argues the IJ improperly analyzed nexus by focusing on the persecutors' motive for harming her husband, when the harm she feared was due to protected grounds, her family relationship and political opinion that the persecutors imputed to her. Therefore, she contends, the BIA abused its discretion in not rationally explaining why the disappearance of Arcenio's brothers would not sufficiently enhance her showing of a well-founded fear to require reopening and remand to the IJ for further evidence and analysis. There is a rather simple answer to this contention. "The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board." 8 C.F.R. § 1003.2(a). "[I]n cases in which the ultimate grant of relief is discretionary . . . , the BIA may leap ahead [of threshold

-8-

issues] and simply determine that . . . the movant would not be entitled to the discretionary grant of relief." INS v. Abudu, 485 U.S. 94, 105 (1988).

Here, based on Barrera Arreguin's declaration and the prosecutor's summary of her sister-in-law's report, the BIA could reasonably conclude that this evidence of the brothers' disappearance would not likely change the initial finding of a lack of nexus between the feared persecution and a protected ground. Moreover, lack of nexus was an alternative ground for the initial decision. Barrera Arreguin's new evidence did not diminish (and may have added to) the prior substantial evidence that members of Arcenio's family who were not active participants in his auto-defense group do not have a well-founded fear of future persecution. For these reasons, the BIA did not abuse its substantial discretion in denying the motion to reopen.

We deny the petitions for review.

_____